# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| VINSON SHIPLEY, | ) | CASE NO.  1:05CV1761 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CHRISTINE MONEY, Warden | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

This action is before the Court upon the application of Vinson Shipley (Shipley) for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1, Petition.) Shipley is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to a conviction and sentence on six counts of sexual battery and one count of corruption of another with drugs in the cases of *State v. Shipley*, Case Nos. 02CR061126 and 02CR061386 (Lorain County 2004).  For the reasons set forth below, Shipley's petition for a writ of habeas corpus is **DENIED**.[1]

## I.

## INTRODUCTION

The State appellate court reviewing Shipley's conviction described the follow facts as relevant to the petition:

> This case involved allegations of sexual conduct by Defendant [Vinson Shipley] with two separate students:  Kimberly Wright ("Wright") and Elva Flowers ("Flowers").

---

[1] In his petition, Shipley requests leave to conduct discovery on his claims. The Court finds that no discovery is needed to resolve the issues raised in his petition. As such, his request for leave to pursue discovery is **DENIED**.

*Kimberly Wright*

Wright testified that she attended Admiral King High School during the majority of her junior year, where Defendant taught. At no time was she the wife of Defendant. She took his government class while attending that high school. Her first day in class she recalled Defendant telling her that she "looked really good for a white girl." She developed an attraction for him over the school year because he was "comfortably outspoken[,]" and looked his phone number up in the local telephone directory. She would call him often to talk about almost anything. The first time she visited his home, she went to drop off a card for him after he was absent for a week due to illness. She then began regularly returning to give him homework because she often skipped classes. Defendant never told Wright that she should not come to his home. Wright went to his home both by herself, and occasionally with her friends Ashley Frame ("Frame") and "Richelle Rogers ("Rogers").

Wright testified about the first time she and Defendant kissed. During May 2002, while she was still attending Admiral King High School, she arrived at his home to find another student, Joshua Knowles, working with Defendant on some computers in the kitchen. When she began to leave, she asserted that Defendant asked her to accompany him to his daughter's bedroom so that he could show her a picture. When he could not find the picture, he turned and French kissed Wright.

Following that first kiss, Wright continued to return regularly to Defendant's home. The next time she visited, a week later, he gave her a necklace and bracelet. After the first few visits, she started to park down the street, away from Defendant's home, so that her car would "not attract attention." Wright would take her mother's keys, sneak out of her parents' home late at night, and drive to Defendant's home, sometimes at Defendant's request.

During June of 2002, while Wright was still registered on the lists of Admiral King High School as a student, she recalled watching some news with Defendant in his bedroom, holding hands with him, and smoking marijuana with him. Wright indicated that Defendant preferred that she smoked with him than unsupervised and by herself, and stated that Defendant provided the marijuana. Defendant and Wright then engaged in both oral and vaginal sex over a four hour time period. She recalled that Defendant used a condom, a Magnum from his top dresser drawer.

*****

2

Wright recalled engaging in sexual conduct with Defendant five or six times during the summer of 2002.

*****

The State offered multiple witnesses in support of Wright's testimony. Rodgers and Frame, friends of Wright's from Admiral King High School, testified about the times when they accompanied Wright to Defendant's home. They both recalled at least one time when they parked down the street from Defendant's so that Wright could visit him.

*****

The State played a videotape of the police executing a search warrant for Defendant's home, and Detective Carpentiere explained the tape as it played. The house, he indicated, was laid out almost exactly as Wright had drawn it. Moreover, the detective verified the placement of certain items in Wright's drawing of Defendant's bedroom: clown and figurines on his bookshelf, the special hanger behind Defendant's bedroom door that could only be seen with the door closed, and the small pictures in the frame on Defendant's bed. He also found the condoms in the top dresser drawer underneath some other objects, and finally uncovered the butterfly necklace in the exact location given by Wright, though he had to look twice to find it.

Detective Carpentiere also did a visual inspection of Defendant's body to verify what Wright told him about Defendant's identifying marks. They, in general, matched her description, though she failed to identify a large scar on Defendant's abdomen. However, the detective initially thought the scar was a flap of skin, and did not recognize it as a scar at first.

During Detective Carpentier's continued investigation, he also uncovered the name of Elva Flowers after an interview with Defendant's daughter, Alisha.

*****

*Elva Flowers*

Elva Flowers testified that she attended Admiral King High School, and took one of Defendant's classes. She recalled that "everyone knew [Defendant] as *** the cool teacher." During the second week of class, she saw him in the hall and began showing him pictures of her daughter. Defendant's daughter, Alisha, was 15 years old and pregnant at the time, and Flowers remembered Defendant asking her to talk to his daughter about her situation. She agreed. Flowers originally spent time with Defendant and his daughter, both at Defendant's home and at her grandparents' home where she lived, but she eventually spent more time with Defendant alone. After a while, Defendant began to make "passes at

3

[her]." Flowers remembered the first time Defendant became physical with her: "[Defendant] picked up [her] hand and he kissed [her] hand and then started kissing [her] all the way up *** [her] arm and gave [her] a kiss on the cheek[.]" Flowers was shocked. This incident happened during September of Flower's senior year of high school, while she was still enrolled at Admiral King.

Flowers and Defendant continued to see each other, often talking on the phone for hours. Flowers testified that they first engaged in vaginal sex on Sweetest Day in 1995, during her senior year of high school.

*****

Flowers indicated that she and Defendant had sex together more than 50 times before she graduated from high school.

*****

*State v. Shipley*, 2004 Ohio App. LEXIS 393, *P14-*P43 (Ohio Ct. App., Lorain County Feb. 4, 2004).

In the case involving Kimberly Wright, Shipley was indicted by a Lorain County Grand Jury on four counts of sexual battery in violation of Ohio Rev. Code § 2907.03(7) and two counts of corruption of another with drugs in violation of Ohio Rev. Code § 2925.02. (Case No. 02CR061126, Docket No. 12, Ex. A.) In a separate case, Shipley was also indicted by the grand jury on two counts of sexual battery arising out of his relationship with Elva Flowers. (Case No. 02CR061386, Docket No. 12, Ex. B.)

The two cases were consolidated for trial. After the trial court dismissed one count of corruption of another with drugs, the jury returned a guilty verdict on the remaining charges. On April 14, 2003, Shipley was sentenced to two years each for the four convictions in Case No. 02CR061126, and two years for the remaining drug conviction. The sexual battery sentences were to be served concurrent with each other, but the drug sentence was to be served consecutively with the sexual battery charges; for

a total of four years imprisonment in this case. (Case No. 02CR061126, Docket No. 12, Ex. C.)  In Case No. 02CR061386, Shipley was sentenced to consecutive one year sentences on the two sexual battery charges. (Case No. 02CR061386, Docket No. 12, Ex. D.) The sentences in these two cases were entered to run consecutive to each other, for an aggravate of six years of imprisonment.

In a timely direct appeal, Shipley, through counsel, appealed both his convictions and his sentence. He challenged various evidentiary rulings at trial, the constitutionality of the underlying statutes, the legal sufficiency of instructions to the jury, the effectiveness of trial counsel, as well as the sufficiency of the evidence supporting his convictions. He also challenged the appropriateness of his sentence. On February 4, 2004, the Ninth District Court of Appeals issued a decision that sustained Shipley's convictions, but reversed and remanded the case to the trial court for re-sentencing. Applying *State v. Comer*, 99 Ohio St. 3d 463 (2003), the state appellate court found that the trial court had erred when it failed to state at the sentencing hearing its reasons for imposing consecutive sentences under Ohio Rev. Code § 2929.14.[2]

On remand, the trial court announced for the record its reasons for the consecutive sentences, and sentenced Shipley to the same term of imprisonment. This

---

[2] Specifically, the appellate court found that the trial court was required to have made the following findings and given the following rationale at the sentencing hearing: (1) consecutive sentences were "necessary to protect the public from future crime or to punish the offender"; (2) "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; (3) consecutive sentences were justified by one of the three factors under § 2929.14(E)(4), including that "[t]he harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed adequately reflects the seriousness of the offender's conduct;" (4) the rationale required by *Comer* supporting each of the first three findings; and (5) that "the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." *See* Ohio Rev. Code §§ 2929.14(B) and (E)(4). While these findings were included in the journal entry recording the sentence, the appellate court noted that the trial court failed to make these explicit findings at the sentencing hearing, itself.

sentence was journalized on June 11, 2004. (Docket No. 12, Ex. J and K.) Shipley did not file a timely appeal from this sentence.

On August 4, 2004, the Ohio Supreme Court denied Shipley leave to appeal the February 4, 2004 appellate court decision. As grounds for the dismissal, the Ohio Supreme Court found that the appeal had not raised any substantial constitutional questions. (Docket No. 12, Ex. I.)

On June 27, 2005, one year after he was re-sentenced, Shipley filed a motion for leave to file a delayed appeal to the Ninth District Court of Appeals. Through this "delayed" appeal, Shipley asked the state appellate court to consider the effect that *Blakely v. Washington*, 542 U.S. 296 (2004), issued June 24, 2004, had on his sentence. He did not, however, argue that his prior counsel was ineffective for failing to raise *Blakely* in a direct appeal from the new sentence. On July 21, 2005, the court of appeals denied Shipley's request for a "delayed" appeal and affirmed the trial court's judgment. In so ruling, the state appellate court found that Shipley had "failed to set forth sufficient reasons for having failed to perfect a timely appeal." (Docket No. 12, Ex. N.) Shipley did not appeal this decision to the Ohio Supreme Court.

Shipley filed his petition for a writ of habeas corpus with this Court on July 11, 2005.[3] (Docket No. 1.) Respondent filed a Return of Writ on September 8, 2005, and Shipley has filed a Traverse to the Return of Writ. (Docket Nos. 9 and 16, respectively.) Thus, the petition is ready for decision.[4]

---

[3] This matter was originally assigned to the docket of the Honorable Kathleen M. O'Malley. The action was reassigned to the docket of the Honorable Sara Lioi on March 23, 2007.
[4] On August 23, 2005, an automatic reference was made to Magistrate Judge James Gallas. The reference was withdrawn on by the Court on July 24, 2007.

## II.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000); *Miller v. Francis*, 269 F.3d 609, 613-14 (6th Cir. 2001). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

A state prisoner must exhaust all available state remedies or have no remaining state remedies prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c). *See Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 935 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4 (1982); *Picard v. Connor* 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). Federal courts lack jurisdiction to consider any claim that was not fairly presented to the state courts. *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard,* 404 U.S. at 275. The exhaustion requirement is properly satisfied when the highest court in which petitioner was convicted has been given a full and fair opportunity to rule on all of the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Fair presentment of a claim in a federal constitutional context requires a petitioner to appraise the state courts that a claim is a federal claim, "not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). In determining whether a petitioner has appraised a state court that his claim is based on federal law, the Sixth Circuit observed that:

> [a] habeas court may consider whether (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged facts well within the mainstream of the pertinent constitutional law.

*Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004). The Court finds, and Respondent concedes, that Shipley has exhausted his state court appeals. Because Shipley has no remaining state remedies, his petition is properly before this Court.

8

## III.

## LAW AND ANALYSIS

In his application, Shipley raises the following five grounds for

relief:

1. The sentence imposed upon the petitioner in case number 02CR061126 exceeded the statutory maximum as determined by the jury's verdict and was imposed in violation of the petitioner's rights as set forth in the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

2. The petitioner was deprived of the effective assistance of trial counsel in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

3. The petitioner was deprived of his right of due process under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution for the reason that the Court failed to properly instruct the jury on the elements of the offense of sexual battery in that it did not tell the jurors to find the petitioner guilty it must first find that Kim Wright was attending school when the sexual activity occurred and it failed to define school as it related to the charges in both indictments.

4. The criminal prosecution and conviction of the petitioner for the felony crime of sexual battery in case number 02CR061386 deprived him of his right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution because it was obtained outside of the statutorily imposed limitations for prosecution.

5. The petitioner was deprived of his right to due process of law under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution for the reason that his conviction for sexual battery in case number 02CR061126 is not supported by sufficient evidence.

### A.    Procedural Default

Respondent argues that Shipley has waived the first four grounds

for relief by failing to raise the claims in the state courts. Reasons of federalism and

9

comity generally bar federal habeas review of "contentions of federal law […] not resolved on the merits in the state proceeding due to [a petitioner's] failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner has defaulted on a federal claim:

> federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. […] Second, the court must decide whether the state courts actually enforced the state procedural sanction. […] Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. […] This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. [… Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate […] that there was "cause" for him not to follow the procedural rule and that it was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). *See Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). To establish cause, a petitioner must present a substantial reason to excuse his procedural default. *Rust*, 17 F. 3d at 161. The prejudice component requires a showing that the petitioner suffered a real and "substantial disadvantage, infecting his

entire trial with error of constitutional dimensions." *Murray,* 477 U.S. at 494. *See United States v. Frady*, 456 U.S. 152, 170 ( 1982).

A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750. A "fundamental miscarriage of justice" occurs only in the "extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 495-96.

### 1.    *Blakely Violation*

In his first claim for relief, Shipley argues that the sentence imposed for the sexual battery convictions in the Wright case was unconstitutional because the aggregate time assessed exceeded the maximum permitted under Ohio statutory law. Shipley relies upon Ohio Rev. Code § 2929.14(B),[5] which, at the time of re-sentencing, required a sentencing court to impose the shortest sentence authorized by law unless specific fact findings supported the imposition of a more substantial sentence. Shipley also complains that the imposition of consecutive sentences was improper because Ohio law only permits such sentences upon findings that the imposition of consecutive sentences are necessary to protect the public from future crime or that consecutive sentences are necessary to appropriately punish the offender. According to Shipley, the fact that the sentencing court made the necessary factual findings to support

---

[5] In the wake of *Blakely*, the Ohio Supreme Court has held that § 2929.14(B), as it appeared at the time of Shipley's re-sentencing, was unconstitutional because it required judicial findings of fact not proven to a jury. *State v. Foster*, 109 Ohio St. 3d 1 (2005). Applying the "severance" remedy as the cure for the Ohio sentencing statutes that offended *Blakely*, all judicial fact-finding requirements from the statutes were removed. *Foster*, 109 Ohio St. 3d at 28. The practical effect of *Foster*, however, was that all of the presumptive sentencing requirements, such as the presumptive minimum sentence for first-time offenders and the presumption against consecutive sentences without additional supporting fact-findings, both of which Shipley argued should have applied to his re-sentencing, were also eliminated. *Id.* at 29-30.

its sentence, rather than the jury, meant that he was denied his Sixth Amendment right to a jury trial.

It is undisputed that Shipley did not take a timely direct appeal from the sentence imposed upon remand, and that the state appellate court refused to consider Shipley's untimely "delayed" appeal on this issue.[6] Shipley is, therefore, barred from presenting this claim to the state courts because he had the opportunity to raise the issue during the course of the direct appeal but failed to do so. *State v. Roberts*, 1 Ohio St. 3d 36, 39 (1982) (the doctrine of res judicata precludes a petitioner from asserting constitutional issues in a postconviction proceeding that were not raised "at the earliest time"). Further, Shipley's procedural default constitutes an "adequate and independent" state ground on which the state relied to foreclose judicial review of this constitutional claim. *See Rust*, 13 F.3d at 160. As such, the first three prongs of the *Maupin* analysis have been met, and the Court may only consider the claim if Shipley can show cause to excuse his failure to present the claims in state court and actual prejudice. *See Rust,* 13 F.3d at 160; *Riggins,* 935 F.2d at 793.

While Shipley devotes much of his Traverse to discussing the impact of the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004)[7] on sentencing statutes that call for fact-findings by sentencing judges, very little is

---

[6] Shipley also failed to seek review by the Ohio Supreme Court of the appellate court's decision to refuse the "delayed" appeal.

[7] The decision in *Blakely* was issued on June 24, 2004, thirteen days after Shipley was re-sentenced by the trial court. In that decision, the Supreme Court struck down a Washington sentencing statute that permitted a sentencing judge to impose a sentence beyond the statutory maximum upon its own findings of certain facts as a violation of the Sixth Amendment right to a jury trial. In so ruling, the Supreme Court noted that it was reaffirming and expanding upon its prior holding in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) that any fact that increases a penalty beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. *Blakely*, 542 U.S. at 301.

offered in response to Respondent's insistence that this claim is procedurally defaulted. Shipley merely indicates that he had only 17 days from the date of the decision in *Blakely* to perfect his appeal. (Traverse at 15.)  Notably, Shipley does not argue that counsel was ineffective for failing to raise *Blakely* in a timely manner on a direct appeal following re-sentencing. Rather, he merely argues that "the timing of the decision and the logistics involved foreclosed the petitioner from obtaining review." (*Id*. at 15).

Neither a petitioner nor his counsel is required to anticipate a change in the law. *See Green v. United States*, 65 F.3d 546, 551 (6th Cir. 1995) (lawyer's failure to predict Sixth Circuit's approach to law did not constitute ineffective assistance of counsel). That being said, the Court is unaware of any case or statutory authority that relieves a petitioner from raising claims arising out of recently announced decisions. Shipley was represented by counsel at re-sentencing. The decision in *Blakely* was available to Shipley and his counsel prior to the deadline for filing a direct appeal from the newly imposed sentence. Nonetheless, Shipley waited 12 months after *Blakely* was announced before he unsuccessfully sought permission for a "delayed" appeal. His failure to take a direct appeal from the sentence issued on remand constitutes a procedural bar for which no cause to excuse the omission has been offered. This first claim is procedurally defaulted.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 495-96. A review of the record reveals that it is not. The perceived deficiencies in the sentence do not go to Shipley's actual innocence.

13

2.      *Ineffective Assistance of Counsel*

In his second claim, Shipley argues that he was denied effective assistance by his trial counsel in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments. (Petition at ¶ 100.) In particular, Shipley complains that trial counsel: failed to move to dismiss the indictment involving Flowers because it was brought in violation of the applicable statute of limitations; failed to object to defective jury instructions relating to the definitions of "school enrollment" and "attendance" under Ohio Rev. Code § 2907.03(A)(7); and failed to object to the trial court's definition of "school" in its instructions as being inconsistent with § 2907.03(A)(7). (*Id.* at ¶ 100, sub. a-c.) Respondent maintains that Shipley has procedurally defaulted on this claim, as well, because he failed to argue the effectiveness of his trial counsel as to these alleged deficiencies on appeal in state court.

Shipley does not dispute that he failed to argue the effectiveness of trial counsel with respect to counsel's failure to object to certain jury instructions and to file a motion to dismiss the underlying charges on direct appeal. As such, the first prong of the *Maupin* analysis is met. As a basis for rejecting the underlying claims on direct appeal, the state appellate court found that Shipley failed to timely object to the jury's instructions, in contravention to Ohio R. Crim. P. 30(A). He also failed to file a motion to dismiss to test whether the sexual battery charges in the indictment in Case No. 02CR061386 were time-barred, as required by Ohio R. Crim. P. 12(C). As noted below in the discussion of Shipley's third and fourth claims for relief, both rules are adequate and independent state grounds to foreclose review of a federal constitutional claim. Consequently, *Maupin's* second and third prongs are also met.

14

Shipley can still secure review of the merits of this claim if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. At the heart of this claim is the notion that trial counsel's ineffectiveness serves as the cause for his procedural default. "The ineffective assistance of counsel may constitute cause for a procedural default, so long as that claim is not itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000), citing *Murray*, 477 U.S. at 488-89. Shipley did not raise in his direct appeal the ineffectiveness of trial counsel due his attorney's failure to challenge the contested jury instructions and the timeliness of the second indictment. Nor did he raise in a post-conviction appeal the ineffectiveness of appellate counsel for failing to address these issues on direct appeal.[8] Thus, the ineffective assistance of trial counsel cannot constitute cause for Shipley's procedural default of claim two. *See e.g. Lewis v. State*, 2005 U.S. Dist. LEXIS 27783, *8 (S.D. Ohio Nov. 3, 2005) (failure to raise effectiveness of appellate court during post-conviction review was fatal to a finding of cause for relief from procedural default).

Nor can Shipley's ineffective assistance of counsel claim be salvaged by a finding that this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 495-96. Neither alleged deficiency in trial counsel's representation goes to Shipley's actual innocence. Furthermore, as reflected in the Court's analysis of Shipley's

---

[8] While Shipley raised the ineffectiveness of his trial counsel on direct appeal, he limited his attack on counsel's performance to the failure to move to suppress evidence seized from Shipley's home. *State v. Shipley*, 2004 Ohio App. LEXIS 393, ¶ 60.

fifth claim for relief, the alleged ineffectiveness in failing to object to the trial court's reasonable jury instructions could not have resulted in a miscarriage of justice.

### 3.    *Improper Jury Instructions*

Through his third claim for relief, Shipley alleges that he was denied due process because the trial court erred when it instructed the jury that it could find him guilty under Ohio Rev. Code § 2907.03 if it found that Wright had attended or was enrolled in the school where Shipley was employed as a teacher. (Petition at ¶ 121.) Attacking the past-tense use of the word "enrolled," Shipley argues that the  instruction permitted the jury to find the elements of § 2907.03 beyond a reasonable doubt, even though the evidence at trial showed that the sexual relationship with Wright occurred during the summer months when school was not in session. (*Id*. at ¶ 123.)

On direct appeal, the state appellate court observed that Ohio R. Crim. P. 30(A) provides that, absent plain error, a party waives any challenges to jury instructions in a criminal case unless that party "objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." *Shipley*, 2004 Ohio App. LEXIS 393, *P8, citing Ohio R. Crim. P. 30(A). Because Shipley had not objected to the instructions at trial, and had not argued plain error, the appellate court ruled that Shipley had "waived his right appeal on this alleged error." *Shipley,* 2004 Ohio App. LEXIS 393, *P8.

Respondent argues that Shipley's failure to object to the jury instructions at trial forecloses federal habeas corpus review. The Court agrees. The first and second steps in the *Maupin* analysis are met because Shipley clearly failed to follow the state procedural rule requiring a contemporaneous objection to a jury instruction at

trial and the rule, itself, is consistently enforced. *See State v. Braden*, 98 Ohio St. 3d 354 (2003). Moreover, it is clear that the last state court to review Shipley's argument rejected it on grounds of procedural default. The third-step in the analysis is also met because a state court's decision to find forfeiture, based on a defendant's failure to object to an instruction at trial, is an independent and adequate ground for decision. *See Scott v. Mitchell,* 209 F.3d 854, 869 (6th Cir. 2000). *See* also *Lync v. Ficco*, 438 F.3d 35 (1st Cir. 2006) (failure to timely object to a jury instruction may properly constitute forfeiture). As such, Shipley has defaulted on this ground and is not entitled to habeas relief unless he can demonstrate cause and prejudice. *See e.g., Lee v. Taylor*, 566 F. Supp. 28, (N.D. Ohio 1983).

With respect to the final *Maupin* factor, Shipley fails to offer any argument in support of a finding of cause to excuse the procedural default.[9] Rather, Shipley focuses on the underlying claim that the trial court's failure to properly instruct the jury on the essential elements of the charge of sexual battery constituted plain error, and deprived him of his right to due process. Nor does Shipley offer evidence of prejudice. As discussed in a review of Shipley's fifth claim below, a reasonable interpretation of the state statute, as determined by the state appellate court, included conduct that occurred while registered students, like Wright, were on summer vacation. As such, the *Maupin* factors are satisfied, and the Court finds that Shipley has procedurally defaulted on this claim.

---

[9] The only possible suggestion of cause is made in connection with the second claim for relief, wherein Shipley argues that trial counsel was constitutional ineffective for failing to raise a timely objection to the challenged instructions. As this Court held in connection with Claim Two, Shipley has defaulted on this argument, as well.

Nor does the record support a finding that this is an "extraordinary" habeas corpus case where excuse of the procedural default must be granted to avoid a "miscarriage of justice." *Murray*, 477 U.S. at 495-96. The instruction in question does not go to Shipley's actual innocence and, as discussed below, the resulting convictions were supported by evidence establishing his guilt beyond a reasonable doubt.

### 4.    *Untimely Prosecution*

In his fourth claim, Shipley complains that he was deprived of his right to due process of law because the prosecution in Case No. 02CR061386, involving Shipley's relationship with Elva Flowers, was commenced more than six years after the charged events. (Petition at ¶ 127.)  Shipley raised this issue on direct appeal. The state appellate court rejected the argument on the ground that Shipley had failed to preserve the issue by filing a motion to dismiss prior to trial, as required by Ohio R. Crim. P. 12(C). The appellate court concluded that the failure to file a motion to dismiss waived the statute of limitations defense. *State v. Shipley*, 2004 Ohio App. LEXIS 393, *P6.

Again, Respondent argues that Shipley's failure to raise this issue before the trial court constitutes a procedural default for purposes of federal habeas corpus. Once again, the Court is inclined to agree. Shipley failed to file a motion to dismiss, as required by Rule 12(C). *See State v. Harrison*, 1981 Ohio App. LEXIS 12270, *2 (Summit County  Apr. 15, 1981). This omission served as the basis for the state appellate court's refusal to consider the alleged error on direct appeal. *See Shipley*, 2004 Ohio App. LEXIS 393, *P6.

Shipley challenges the state appellate court's determination that he had waived the issue of timeliness by failing to file a motion to dismiss by pointing to the decision in *State v. Tolliver*, 146 Ohio App.3d 186, 192 (Ohio Ct. App., Cuyahoga County 2001), wherein the state appellate court held that the criminal statute of limitations could be raised for the first time on appeal, even in a case where a defendant had pled guilty at trial. According to Shipley, the appellate court erred in refusing to entertain the claim on his direct appeal.

As the court in *Tolliver* acknowledged, however, there is a split among Ohio appellate courts on the issue of whether a criminal statute of limitations is waived if not raised in a motion to dismiss. *Id.* at 192. Some lower courts, like *Tolliver*, have ruled that the criminal statute of limitations defense is jurisdictional and can be raised at any time. *See State v. Robinson*, 2000 Ohio App. LEXIS 588 (Ohio Ct. App., Cuyahoga County Feb. 17, 2000); *State v. Hollis*, 91 Ohio App. 3d 371 (Ohio Ct. App., Cuyahoga County 1993). Other Ohio appellate courts have ruled that the statute of limitations defense may be waived if not asserted at the trial level. *See State v. Amin,* 156 Ohio App. 3d 304 (Ohio Ct. App., Lucas County 2004)*; State v. Brown,* 43 Ohio App. 3d 39 (Ohio Ct. App., Hamilton County 1988); *State v. Harrison,* 1981 Ohio App. LEXIS 12270 (Ohio Ct. App., Summit County Apr. 15, 1981).

In *Daniel v. State*, 98 Ohio St. 3d 467, 468 (2003), the Ohio Supreme Court ruled, in the context of a state habeas corpus proceeding, that the expiration of the six-year statute of limitations in Ohio Rev. Code § 3901.13(A)(1) did not divest the trial court of jurisdiction. While the court did not directly address the issue of whether a motion to dismiss must be made at the trial court level to preserve the issue

19

for appeal, the holding in *Daniel* specifically rejects the logic that *Tolliver* applies to excuse the failure to file the motion to dismiss at trial.[10]

    The fact that the Ohio lower courts do not agree as to the preclusive effect of a failure to raise the statute of limitations defense at trial does not invalidate the state appellate court's determination on direct appeal that Shipley had waived the defense, especially in light of the Ohio Supreme Court's ruling that § 2901.13 is not jurisdictional. *Daniel*, 98 Ohio St. 3d at 468. Nor is it within the province of a federal habeas court to review state criminal procedural law. *See Estelle v. McGuire*, 502 U.S. 62, 67-67 (1991); *Gimotty v. Elo*, 40 Fed. Appx. 29, 32 (6th Cir. 2002). As such, the requirement that criminal defendants must raise the statute of limitations defense at trial is an independent and adequate ground from which review may be denied. The Court finds, therefore, that the first three prongs of the *Maupin* test have been met. Furthermore, Shipley fails to argue cause and prejudice sufficient to excuse the procedural default.[11]

    Nor can this claim be save by the "extraordinary habeas corpus case" exception. *See Murray*, 477 U.S. at 495-96.  This claim does not go to Shipley's actual innocence, and the evidence offered by the State in connection with Case No. 02CR061386 amply supports the jury's verdict of guilty on the multiple counts of sexual battery.

---

[10] Indeed, it is worth noting that the Ohio Supreme Court refused to grant certiorari review of Shipley's waiver claim. (Docket No. 12, Ex. I.)

[11] As was the case with Shipley's third claim, he cannot rely on trial counsel's alleged ineffectiveness in failing to move to dismiss the indictment to support a finding of cause. The issue of trial counsel's ineffectiveness, which was the focus of Shipley's second claim, was also procedurally defaulted.

B.      **Sufficiency of the Evidence**

In his fifth and final ground for relief, Shipley argues that his convictions for sexual battery in Case No. 02CR061126 were not supported by sufficient evidence. Ohio Rev. Code § 2907.03(A) provides, in part, that:

> no person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: […] (7) the offender is a teacher […] employed by or serving in a school for which the state board of education prescribes minimum standards […], the other person is enrolled in or attends that school, and the offender is not enrolled and does not attend the school.

Shipley argues that the evidence presented in Case No. 02CR061126 did not demonstrate beyond a reasonable doubt that he violated § 2907.03(7) because the "acts involved happened during the summer months when Admiral King High School was not in Session and as such Wright was not presently attending or enrolled as required by the statute."[12] (Petition at ¶ 133.) Shipley observes that counts three and four of the first indictment involve acts that occurred in July 2002, "when school was not in session and Wright was not attending school. Likewise, counts one and two allege acts occurring between June 1, 2002 and June 30, 2002. School was in session for only a handful of days during that time period." (Traverse, Docket No. 16, at 26-27.)

In rejecting this argument on direct appeal, the state appellate court found:

---

[12] In support of his position, Shipley notes that "the evidence showed that Wright attended Admiral King High School until early June 2002, she testified that the following year she attended Southview High School in Lorain. (*Id*. at ¶ 135).

> [b]efore looking at the evidence presented in this case, we must first address Defendant's contention that the "enrolled in or attends" language under R.C. 2907.03(A)(7) is not met during the summer months when a student is on vacation. We do not agree with Defendant's definition. Enroll is defined as "to insert, register, or enter (as a person or a fact) in a list, catalogue, or roll[.]" Webster's Third New International Dictionary (1961) 755. While a student may not actually be attending classes during the summer months, that student remains registered on the lists of the school, and therefore is enrolled, until the student either graduates, transfers to a different school, or officially leaves for other reasons. Construing the statutory language in any other manner would produce a very ironic result: teachers would be prohibited from engaging in sexual activity with students during the regular school year, but would be permitted to take advantage of their position of authority over those students during the summer months. This is not what the statute intends.

*State v. Shipley*, 2004 Ohio App. LEXIS 393, *P14.

In a habeas proceeding, the federal court is not sanctioned to re-examine state court determinations of state-law questions. A federal court is limited to deciding "whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67-68. It is, therefore, appropriate for federal courts to defer to the state court's interpretation of their own laws. *See e.g., Gimotty*, 40 Fed. Appx. at 32 (in federal habeas proceeding, district court deferred to state law precluding the defense of duress in homicide cases). In light of the fact that the Ohio Supreme Court has not offered a contrary interpretation and there is no indication that it would, it is appropriate for this Court to defer to the reasonable interpretation of the statute offered by the Ninth Appellate District. *See Derungs v. Wal-Mart Stores*, Inc., 374 F.3d 428, 433 (6th Cir. 2004) ("If the state supreme court has spoken on the issue, its decision should be followed: if, however, the only precedent is from the state's intermediate appellate court's, the intermediate court's decision should be followed absent a strong showing that the state supreme court would act in a different manner.")

22

The state appellate court's rejection of Shipley's sufficiency of the evidence claim was not contrary to clearly established federal law or based on an unreasonable determination of the facts in light of the evidence. The evidence offered at trial showed that Wright was still on the rolls at Admiral King High School during the time she testified that she had a sexual relationship with Shipley, a teacher at her school. Wright's testimony was supported by a police detective, who confirmed Wright's description of identifying intimate features of Shipley's body and her knowledge of details in Shipley's bedroom.  In addition to Wright's testimony, the State also offered other witnesses who corroborated the existence of the relationship with Wright. While it is true, and the state appellate court found, that the prosecution and defense offered conflicting testimony at trial, the Court cannot say that, after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have not have found the essential elements beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). As such, Shipley is not entitled to habeas relief on the sexual battery charges involving Wright in Case No. 02CR061126.

**IV.**

**<u>CONCLUSION</u>**

For all the foregoing reasons, Shipley's petition for a writ of habeas corpus (Docket No. 1) is **DENIED**. This Court hereby certifies, pursuant to 28 U.S.C. § 1919(a)(3), that an appeal from the decision would be frivolous and could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). This action is hereby

**DISMISSED.**

**IT IS SO ORDERED.**


Dated: October 29, 2007                          *s/  Sara Lioi*
                                                 _____
                                                 **HON. SARA LIOI**
                                                 **UNITED STATES DISTRICT JUDGE**